**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**November 8, 2006**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

---

BILL J. CORY,

Plaintiff-Appellant,

v.

No. 06-3051

AZTEC STEEL BUILDING, INC.;
UNIVERSAL STEEL BUILDINGS
CORPORATION, a Pennsylvania
corporation; GARY J. BONACCI;
SHAWN DAVIS; ARNOLD DAVIS;
STEEL FACTORY CORPORATION,

Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 03-CV-4193-RDR)**

---

Submitted on the briefs:[*]

Bill J. Cory, pro se, Appellant.

James C. Morrow, Morrow, Willnauer and Klosterman, L.L.C., Kansas City,
Missouri, for Appellees.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

_____

**ANDERSON**, Circuit Judge.

_____

In this pro se appeal, appellant Bill J. Cory challenges district court orders that dismissed various defendants for lack of personal jurisdiction and granted the remaining defendants summary judgment on Cory's racketeering, consumer-protection, and product-liability claims. We exercise jurisdiction under 28 U.S.C. § 1291, and we affirm.

### BACKGROUND

In 1993, Cory, a Kansas farmer, executed a purchase order for five Quonset-style buildings from Midwest Steel Span, which is located in Overland Park, Kansas. Apparently, Midwest then either sold or transferred the purchase order to Universal Steel Factory of Kansas City, Missouri, which placed the order with defendant Steel Factory Corporation (SFC) in Pennsylvania. Cory received the building materials and paid defendant Universal Steel Buildings Corporation (USBC), which is also located in Pennsylvania. Cory erected the buildings.

In 1995, after one of the buildings collapsed in the wind, Cory ordered replacement parts. Defendant Aztec Steel Building, Inc. (ASB), another corporation located in Pennsylvania, shipped the parts to Cory. In 1996, Cory ordered more replacement parts and finished repairing the building.

In June 1999, another building collapsed in high winds. And in 2001, the building that Cory had repaired in 1996 collapsed again in the wind. Cory complained to Defendant Gary Bonacci, SFC's plant manager, and then to the Kansas Attorney General's consumer protection division. Bonacci had the buildings inspected by an engineer, who concluded that "the mode of failure in both buildings appears to be from a lack of resistance to foundation rotation. The buildings should have had a concrete slab . . . as described in the foundation manual." 1 Record on Appeal (ROA), Doc. 81, Ex. M at 3. Cory retained an engineer, who simply opined that "the steel arch framing of both of these structures failed from forces exerted on them from wind." *Id.*, Doc. 48 at 5. In March 2003, the Attorney General's office concluded that there had been no violation of the Kansas Consumer Protection Act.

In August 2003, Cory, aided by counsel, sued ASB and USBC in Kansas state court. The defendants removed the case to the United States District Court in Kansas, where Cory filed an amended complaint, naming, as additional defendants, SFC, Bonacci, and Arnold and Shawn Davis, officers of the corporate defendants. The complaint asserted violations of 18 U.S.C. §§ 1961-1968 (the Racketeer Influenced and Corrupt Organizations Act (RICO)), in addition to Kansas's consumer-protection and product-liability laws. The district court first dismissed SFC, Bonacci, and the Davises for lack of personal jurisdiction, explaining that neither RICO nor the Kansas long-arm statute conferred

jurisdiction. Then, the district court granted ASB and USBC summary judgment, ruling that Cory's RICO claims were time-barred to the extent they alleged injury from the 1995 and 1999 incidents, that the remaining RICO claims failed to show a pattern of racketeering activity, and that Cory's state-law claims were time-barred.

Cory appeals.

## DISCUSSION

### I. Personal Jurisdiction

"We review de novo the district court's dismissal for lack of personal jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). Where, as here, a dismissal is entered without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* We resolve any factual disputes in the plaintiff's favor in determining whether that burden has been met. *Id.* at 1075.

Service of a summons is a means of establishing a court's jurisdiction over a defendant. 1 James Wm. Moore et al., Moore's Federal Practice § 4.03[1] (3d ed. 2006). This case requires that we assess the territorial limits of such service. Consequently, we consider first the federal, and then the state statutory bases that would allow the federal district court in Kansas to reach into Pennsylvania to acquire jurisdiction over SFC, Bonacci, and the Davises.

## A. RICO

Cory argues that the district court should have followed the Fourth and Eleventh Circuits and ruled that RICO provides a statutory basis for personal jurisdiction over "any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). The defendants counter that the district court followed the better reasoned decisions of the Second, Seventh, and Ninth Circuits, which hold that RICO, when raised in the proper venue, extends personal jurisdiction into "any judicial district of the United States" if necessary to satisfy "the ends of justice." *Id.* § 1965(b). For the reasons expressed below, we join the Second, Seventh, and Ninth Circuits and hold that subsection (b) of § 1965, rather than subsection (d), gives RICO its nationwide jurisdictional reach.

Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Our initial inquiry, then, is whether RICO's service of process provision, § 1965, potentially confers jurisdiction by authorizing service of process. In relevant part, the statute provides:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States

for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States . . . .

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas [sic] issued by such court to compel the attendance of witnesses may be served in any other judicial district . . . .

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965.

In 1986, the Ninth Circuit identified subsection (b) as providing for service of process upon, and the conferral of personal jurisdiction over, defendants residing beyond the federal court's district. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). The court did not, however, address subsection (d)'s service provision. The following year, the Seventh Circuit followed the Ninth, stating that subsection "(b) creates personal jurisdiction by authorizing service." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987). But it too did not mention subsection (d). That subsection did not rise to circuit-court prominence until ten years later, when the Eleventh Circuit identified subsection (d) as projecting personal jurisdiction nationwide. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d

935, 942 (11th Cir. 1997).  But that court did "not pause long over the . . . question," and oddly, it cited *Lizak* for support.  *BCCI Holdings*, 119 F.3d at 942.  The Fourth Circuit soon joined the fray, settling on subsection (d).  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997).  But the court did not observe the contrary position of the Seventh and Ninth Circuits, and it only mentioned subsection (b) in passing, characterizing it as a venue provision.  *Id.*

The first federal appellate court to actually analyze § 1965's full text and offer reasoning for its choice of subsections was the Second Circuit.  In *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998), the court conducted a comprehensive and sequential reading of the statute, concluding that subsection (b) is the correct jurisdictional provision.  The court based its conclusion on three points.  First, subsection (a) sets venue in "any district in which [a defendant] resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965(a), thereby suggesting that an "action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant," *PT United*, 138 F.3d at 71.  Second, subsection (b) authorizes service of a summons on "'other parties'" residing beyond the venued district if necessary to further the "'ends of justice.'"  *Id.* (quoting 18 U.S.C. § 1965(b)).  By imposing the quoted limitations, Congress expressed a preference that defendants not be unnecessarily haled into unexpected forums.  *Id.* at 72.  And third, subsection (d)'s reference to "'[a]ll other process'"

must mean process different than a summons or a government subpoena, both of which are dealt with in previous subsections. *Id.* at 72 (quoting 18 U.S.C. § 1965(d)).

We find this reasoning persuasive and consistent with congressional intent.[1] In its report on the Organized Crime Control Act of 1970, which gave birth to RICO, the House Judiciary Committee declared that "[s]ubsection *(b)* provides *nationwide service of process* . . . in actions under section 1964 [providing civil remedies for RICO violations]," and that "[s]ubsection (d) provides . . . all other process in actions under the [entire RICO] chapter." H.R. Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034 (emphasis added). Further, the committee stated that § 1965 is "modeled on present antitrust legislation." *Id.* Justice Jackson summarized the venue and jurisdictional contours of antitrust legislation in *United States v. National City Lines*:

> The scheme of the [antitrust] statutes[2] . . . is that the Attorney

---

[1] When a statute is ambiguous, we may examine legislative history to ascertain the statute's meaning. *State Ins. Fund v. S. Star Foods, Inc. (In re S. Star Foods, Inc.)*, 144 F.3d 712, 715 (10th Cir. 1998) (commenting that a "split in the circuits is, in itself, evidence of . . . ambiguity" when a statute's "meaning is not evident based on the plain language").

[2] For instance, Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the
> (continued...)

General may lay the venue in any district where he may properly serve one or more of his defendants. He may go ahead with his action against them, whether he is allowed to bring in others or not. Before he can bring in other parties than those properly served in the district, i.e., those 'inhabitant,' 'transacting business,' or 'found' there, it must be made to appear to the court that the ends of justice require that they be brought before the court, in which case they may be summoned from any district.

334 U.S. 573, 598 (1948) (Jackson, J., concurring) (quoting 15 U.S.C. § 22). This explanation coincides with our reading of § 1965, subsections (a) and (b): When a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice.

Next, we turn to whether § 1965, as interpreted above, actually conferred personal jurisdiction over SFC, Bonacci, and the Davises. The district court did

---

[2](...continued)
district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. And Section 15 of the Clayton Act provides:

The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of this Act, and it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. . . . Whenever it shall appear to the court before which any such proceeding may be pending that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned whether they reside in the district in which the court is held or not, and subpoenas to that end may be served in any district by the marshal thereof.

15 U.S.C. § 25. *Accord id.* §§ 4 & 5 (Sherman Act), 9 & 10 (Wilson Tariff Act).

not determine whether there was jurisdiction over at least one defendant so that other defendants could be served nationwide to further the ends of justice. Instead, the district court proceeded directly to the "ends of justice" requirement and ruled that it was not met simply because all of the defendants were subject to suit in Pennsylvania. We disagree with the district court's interpretation of the "ends of justice," as it comports with neither the congressional directive to "liberally construe[ ] [RICO] to effectuate its remedial purposes," H.R. Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4036, nor the antitrust legislation on which RICO was modeled, *see id.* at 4034.[3]

RICO was intended as a means to eradicate organized crime. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923. That purpose is not furthered by withholding nationwide service of process whenever all of the RICO defendants could be haled into one court for a single trial. While the district court's construction of the "ends of justice" might promote judicial economy, it might also mean that some RICO violations would go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state. Insulating such a criminal enterprise from liability, when, for instance, the victim is unable to finance long-distance litigation, is not

---

[3]     The district court's failure to resolve whether it had personal jurisdiction over at least one defendant does not require remand because, while we disagree with the district court's construction of the "ends of justice" standard, we conclude *infra* that the standard is not met in this case.

consistent with RICO's purpose.

The district court's construction is also not in accord with antitrust legislation. As noted above, the Clayton, Sherman, and Wilson Tariff Acts all prescribe an "ends of justice" analysis for allowing "other parties" to be summoned before the court, "whether they reside in the district in which the court is held or not." 15 U.S.C. §§ 5 (Sherman Act), 10 (Wilson Tariff Act), & 22 (Clayton Act). The Supreme Court has rejected the notion that a confluence of defendants within a single judicial district controls the "ends of justice" analysis. *See Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 46 (1911) (stating that personal jurisdiction had properly been acquired over nonresident defendants under the Sherman Act's "ends of justice" provision, as one of the many defendants was present within the district); *see also United States v. Standard Oil Co. of N.J.*, 152 F. 290, 296 (C.C.E.D. Mo. 1907) (providing further background on the personal jurisdiction issue decided in *Standard Oil*, 221 U.S. at 46, by rejecting the nonresident defendants' argument that "the ends of justice" would be better served if they were summoned into court "in the district of the inhabitancy of a larger number of the defendants").

Accordingly, we conclude that the "ends of justice" analysis is not controlled by the fact that all defendants may be amenable to suit in one forum. In so holding, we disagree with the Ninth Circuit, which reached the contrary conclusion by inadequately considering the congressional intent underlying RICO

-11-

and by ignoring federal antitrust legislation.  *See Butcher's Union*, 788 F.2d at 539 (stating, without elaboration, that the lower court had properly considered RICO's purpose "and the phrase's location in the section providing for nationwide service of process").  We need not, however, offer a competing definition, as the "ends of justice" is a flexible concept uniquely tailored to the facts of each case.  And in the current case, we have Cory's assertion that the ends of justice require nationwide service simply because he has sustained damages and litigation costs in Kansas.[4]  We conclude, as a matter of law, that such facts, standing alone, do not satisfy the "ends of justice" standard.  Without federal statutory authorization for nationwide service, we need not proceed to the Fifth-Amendment inquiry.

## B.  The Kansas Long-Arm Statute

In the absence of federal authorization for nationwide service, the district court turned to state law.  *See* Fed. R. Civ. P. 4(k) (listing, as an alternative to nationwide service under a federal statute, service under a state's long-arm statute).  The court first presumed that the Kansas long-arm statute, Kan. Stat. Ann. § 60-308(b), authorized service, and then proceeded directly to the due-process inquiry.  We do the same.

Because "sovereignty defines the scope of the due process test," *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994),

---

[4]     Cory does not claim a financial impediment to suit in Pennsylvania.

the Fourteenth Amendment governs application of a state's long-arm statute, *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). The Fourteenth Amendment's "Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quotations omitted). Thus, a nonresident defendant is subject to a court's personal jurisdiction only if there are "minimum contacts between the defendant and the forum state." *Id.* (quotations omitted). This standard is satisfied if the nonresident defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 1090-91 (quotations omitted). Otherwise, the nonresident defendant must have "continuous and systematic general business contacts" with the forum state. *Id.* at 1091 (quotations omitted).

The district court first observed that, instead of offering any evidence or argument concerning SFC's direct contacts with Kansas, Cory claimed that Midwest Steel Span acted as SFC's agent in Kansas. The district court rejected that claim for lack of evidence, stating that Cory failed to show that SFC had any ownership interest in Midwest Steel or any control over Midwest Steel's business affairs. On appeal, Cory makes no agency argument. Consequently, our consideration of the matter ends. *See* Fed. R. App. P. 28(a)(9)(A) (stating that an

-13-

appellant's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

Regarding the Davises' and Bonacci's contacts with Kansas, the district court observed that Cory only offered evidence that Bonacci had responded to an inquiry from the Kansas Attorney General about Cory's claims. The district court ruled that this limited contact was insufficient to confer jurisdiction. On appeal, Cory does not argue otherwise, and we do not consider the matter further. *See id.*

We conclude that the district court did not err in dismissing SFC, the Davises, and Bonacci for lack of personal jurisdiction.

## II.  *Statutes of Limitations*

We review de novo the district court's grant of summary judgment to ASB and USBC on statute-of-limitations grounds. *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1428 (10th Cir. 1996). Summary judgment on such grounds is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## A.  RICO

The statute of limitations for a RICO action is four years. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). While the Supreme Court has not settled upon a definitive rule for when the limitations clock starts running, it has announced two possibilities:  either when the plaintiff knew or should have known of his injury (the injury-discovery rule); or when the plaintiff was injured, whether he was

-14-

aware of the injury or not (the injury-occurrence rule).  *Id*. at 553 & 554 n.2.[5]  We need not choose between these rules today because the result is the same no matter which rule is applied.

The crux of Cory's RICO claims is that the defendants sold "defective buildings to take his money."  Aplt. Br. at 16.  Cory testified at deposition that he "realized [he] had a problem when two buildings had blown down."  1 ROA, Doc. #81, Ex. A (Dep. at 124).  Consequently, Cory was injured in 1993, 1995, and 1996 when he purchased the building materials and replacement parts, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) (stating that a civil RICO "injury" means "harm from the predicate acts" that constitute racketeering), and he was aware of his injury no later than June 1999, when the second building collapsed.  Yet he failed to initiate litigation within four years of any of these dates.  Therefore, all of the RICO claims were untimely under either the injury-discovery or injury-occurrence rules.

The district court determined, however, that Cory had timely asserted a RICO claim as to the building that collapsed in 2001.  This determination evinces a misunderstanding of the nature of this case.  Cory's injury was complete when

---

[5]     In *Rotella*, 528 U.S. at 554, the Supreme Court rejected the "injury and pattern discovery rule," which this court had adopted in *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820 (10th Cir. 1990) (holding that "a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern" (quotation omitted)).

he purchased the allegedly defective buildings and parts.  The defendants'
purported racketeering activities caused that injury and the wind revealed it by
collapsing the buildings.

## B.  The State-Law Claims

In Kansas, there is a three-year statute-of-limitations period for consumer
protection claims, *Roy v. Young*, 93 P.3d 712, 715 (Kan. 2004) (citing Kan. Stat.
Ann. § 60-512(2)), and a two-year period for product liability claims, *Fennesy v.
LBI Mgmt., Inc.*, 847 P.2d 1350, 1355 (Kan. Ct. App. 1993) (citing Kan. Stat.
Ann. § 60-513).  The limitations periods for both claims generally begin running
when the plaintiff discovers his injury, *see Roy*, 93 P.3d at 715; Kan. Stat. Ann.
§ 60-513(b).

The district court ruled that Cory's state-law claims were untimely because
they had accrued by June 2001 and Cory sued in August 2003.  But under this
analysis, Cory's consumer-protection claim would have been timely, as it was
brought within three years of accrual.  Nevertheless, as we concluded above, Cory
discovered his injury by June 1999, which is more than four years before he filed
suit.  Accordingly, both of Cory's state law claims are time-barred.

CONCLUSION

Following the Second, Seventh, and Ninth Circuits, we conclude that § 1965(b) gives RICO its nationwide jurisdictional reach.  But we disagree with the Ninth Circuit and the district court's construction of the "ends of justice" standard, which must be met in order to effectuate nationwide service.  Nevertheless, because the standard is not met under the facts of this case, and because there is no state statutory conferral of personal jurisdiction, we affirm the district court's order dismissing SFC, the Davises, and Bonacci.  We also affirm the district court's order granting summary judgment to ASB and USBC.  But we do so entirely on the basis of the statutes of limitations.[6]

---

[6]    We grant Cory's motion to file a late reply brief, and we direct the Clerk of the Court to file the brief.  We deny Defendants-Appellees' request for costs and attorney fees under Fed. R. App. P. 38.