RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

AARON HALL; KATHERINE GLOD; JEFFREY BINDER,

*Plaintiffs-Appellees*,

*v.*

TRIVEST PARTNERS, L.P., TGIF POWER HOME INVESTOR, L.L.C., TRIVEST INVESTMENT ADVISORS, L.L.C., TRIVEST PARTNERS, INC., TRIVEST GROWTH PARTNERS, INC., TRIVEST GROWTH PARTNERS, L.P., TRIVEST GROWTH PARTNERS G.P., L.L.C., TRIVEST GROWTH INVESTMENT FUND, L.P., and TGIF POWER HOME BLOCKER, INC.,

*Defendants-Appellants*.

Nos. 25-1278/1538

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:22-cv-12743—F. Kay Behm, District Judge.

Argued: February 5, 2026

Decided and Filed: June 16, 2026

Before: CLAY, KETHLEDGE, and BUSH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellants. Nicholas A. Coulson, COULSON P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Brian D. Schmalzbach, R. Trent Taylor, Frank Talbott, MCGUIREWOODS LLP, Richmond, Virginia, for Appellants. Nicholas A. Coulson, COULSON P.C., Detroit, Michigan, for Appellees.

KETHLEDGE, J., delivered the opinion of the court in which BUSH, J., concurred. CLAY, J. (pp. 7–11), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.  The plaintiffs brought this civil RICO suit in federal court in Michigan, and eventually named as defendants nine Florida corporations without contacts there.  The district court held that it had personal jurisdiction over those defendants under the RICO statute, 18 U.S.C. § 1965(b), because, in the court's view, litigation of the case in Michigan would be as convenient for the parties as litigation in Florida.  We hold that those reasons were insufficient as a matter of law under § 1965(b), and so we reverse.

I.

This case comes to us at the pleadings stage, so we take the allegations in the amended complaint as true.  *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys.*, 877 F.3d 687, 689 (6th Cir. 2017).

In 2014, William Waller founded Power Home Solar, L.L.C., a company that sold residential solar-panel systems through in-home sales presentations.  Company representatives promised homeowners that the systems would reduce their electricity bills by up to 90%, and often that the government would cover the system's cost.  Power Home was registered to do business in Michigan and Florida.

In early 2018, Trivest Partners, L.P.—through its subsidiary Trivest Power Home Investor, L.L.C.—acquired a 25% share in Waller's company.  Alongside Waller, the Trivest entities prepared, mailed, and posted online the company's advertising materials, which typically promised homeowners that they could "save thousands on their electric bills" and "get paid $2,000 after install."  Am. Compl., R. 96 ¶¶ 92, 98, 99.  Despite the advertising, business was bad, and in 2022 Waller's company declared bankruptcy.

A month later, Michigan citizens Aaron Hall, Katherine Glod, and Jeffrey Binder—each of whom had purchased one of the company's solar-panel systems for over $30,000—filed a putative class-action lawsuit in federal court against Waller, Trivest Partners, L.P., and TGIF

(formerly Trivest) Power Home Investor, L.L.C.  The plaintiffs alleged that their electricity bills had not been "reduced in any amount near 70-90%," and in some instances had even increased. *Id.* ¶ 114.  The plaintiffs further alleged that the defendants had "committed countless acts of mail and wire fraud" by disseminating "false, misleading, and fraudulent advertisements[.]"  *Id.* ¶ 92.  The plaintiffs claimed the defendants had conspired to engage in racketeering, in violation of the civil RICO Act, and had violated the Michigan Consumer Protection Act.  18 U.S.C. § 1962(c)-(d); M.C.L. § 445.901, et seq.

The two Trivest defendants (both Florida citizens) moved to dismiss, arguing that the district court in Michigan lacked personal jurisdiction over them.  They contended that the civil RICO Act—which expands a district court's personal jurisdiction when "it is shown that the ends of justice require that other parties residing in any other district be brought before the court"— did not expand the district court's personal jurisdiction here.  18 U.S.C. § 1965(b); *see* Fed. R. Civ. P. 4(k)(1)(C).  That was because, they said, a district court in Florida would have personal jurisdiction over all three defendants—and thus, they reasoned, "the ends of justice" could not require that they be sued in Michigan, a state with which they had no relevant contacts.

The district court denied the defendants' motion, reading section 1965(b) to require evaluation of "a number of factors," which it held "weigh in favor of retaining the litigation here."  Op. & Order at 23-24.  The Trivest defendants then petitioned under 28 U.S.C. § 1292(b) for permission to appeal the court's order.  We granted that petition.  *In re Trivest Partners LP*, No. 24-0102, 2025 U.S. App. LEXIS 6704, at *3-4 (6th Cir. Mar. 21, 2025).

Meanwhile, litigation proceeded in the district court.  As relevant here, the plaintiffs added seven more Trivest entities as defendants—all of them, again, Florida citizens without contacts with Michigan.  The court held that it had personal jurisdiction over those defendants too.

II.

We review de novo the district court's interpretation of 18 U.S.C. § 1965(b).  *See United States v. Haynes*, 55 F.4th 1075, 1077 (6th Cir. 2022).

"The province of the court is, solely, to decide on the rights of individuals." *Marbury v. Madison*, 5 U.S. 137, 170 (1803). In a particular case, however, that power extends only to parties over which the court has personal jurisdiction. *See Fuld v. PLO*, 606 U.S. 1, 11 (2025). "A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).

Here, whether the district court was able to serve process on the Trivest defendants depends on the meaning of 18 U.S.C. § 1965(b). Section 1965 provides in relevant part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Section 1965(a) is a venue provision. *Peters Broad. Eng'g v. 24 Capital*, 40 F.4th 432, 440 (6th Cir. 2022). Specifically, a civil RICO action may be "instituted" only in a district where a defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Thus, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Peters*, 40 F.4th at 439 (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).

Section 1965(b) then allows a district court to exercise personal jurisdiction over additional parties residing in other districts, but only when "the ends of justice require[.]" 18 U.S.C. § 1965(b). Thus, § 1965 presents "no impediment to prosecution of a civil RICO action in a court foreign to some defendants" if doing so "is necessary"; but "Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora." *PT United*, 138 F.3d at 71-72.

Here, the plaintiffs brought suit in Michigan against one defendant residing in North Carolina (Waller) and nine other defendants (the proliferous Trivest entities) residing in Florida.

Venue is proper in the district court in Michigan because Waller undisputedly has minimum contacts there.  But likewise undisputed is that the Trivest defendants have zero contacts with Michigan, and indeed could not be sued there according to "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The question, then, is whether "the ends of justice require[,]" 18 U.S.C. § 1965(b), that this suit be litigated in Michigan—when all nine of the Trivest defendants reside in Florida, and Waller's company (which sold the solar-panel systems to these plaintiffs) apparently had an office there.  The statute does not define the term "ends of justice," but RICO schemes routinely extend to more than one state; and we agree with the Ninth Circuit that § 1965(b) ensures that plaintiffs can "bring all members of a nationwide RICO conspiracy before a court in a single trial."  *Butcher's Union*, 788 F.2d at 539; *see also, e.g.*, *Peters*, 40 F.4th at 441 (§ 1965(b) "ensures that there will be at least one federal forum for all defendants in a single civil RICO trial").

But that hardly means a plaintiff can hale any RICO defendant it likes—no matter how far-flung—into court in any district where a single defendant has minimum contacts (to establish venue under § 1965(a)).  Section 1965(b) demands that "the ends of justice *require*" service on nonresident defendants, not that service of process upon remote defendants merely advance or support those ends.  "Require" conveys a sense of necessity; and so our court and others have recited that § 1965(b) permits service on out-of-state defendants only when "'necessary.'"  *Peters*, 40 F.4th at 440 (quoting *PT United*, 138 F.3d at 71-72).  And as the Second Circuit has observed:  when all the defendants in a RICO case are subject to suit in one district, the "ends of justice" are "unlikely" to *require* haling nonresident defendants into another district where some or many of them, as a matter of due process, would normally not be subject to suit at all.  *PT United*, 138 F.3d at 70.

In this case we need not endorse the Ninth Circuit's conclusion that—for a district court to serve process on defendants lacking minimum contacts with that district—"the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539.  For our purposes it is enough to say that neither the plaintiffs nor the district court, respectfully, have identified reasons that "require"

litigation of this suit in Michigan.  The plaintiffs do not argue that the Trivest defendants have any contacts with Michigan.  The district court, for its part, reasoned that § 1965(b) was satisfied for three reasons:  the case had already been pending in Michigan for ten months; the Trivest defendants had already secured "competent counsel located in Michigan"; and the court thought it no less convenient for the defendants to litigate in Michigan than for the plaintiffs to litigate in Florida.  But those considerations are insignificant when compared to the due-process principle of "treating defendants fairly"—as the Supreme Court has often emphasized in its personal-jurisdiction cases.  *Fuld*, 606 U.S. at 13; *see also, e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 254 (1958).

To be clear, the Court's personal-jurisdiction cases are apposite here only by analogy: most of those cases concern the power of state courts as limited by the 14th Amendment; whereas, for actions arising within the United States, the Supreme Court has not identified any limits, under the Fifth Amendment, on the personal jurisdiction of the federal courts.  *See Fuld*, 606 U.S. at 18-19.  Yet the Supreme Court treats even the most compelling considerations of convenience as discretionary.  *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (explaining that the doctrine of *forum non conveniens* is discretionary).  By contrast, "a showing that the defendant has purposefully availed itself of the privilege of transacting business in the forum state, thus invoking the benefits and protections of its laws[,]" is "the *sine qua non* for *in personam* jurisdiction."  *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (cleaned up).  And so, reasoning by analogy, we hold that interests of convenience cannot "require," for purposes of § 1965(b), that a defendant be haled into a district in which it lacks minimum contacts.  We therefore disagree with the district court's conclusion that it has personal jurisdiction over the Trivest defendants.

\*     \*     \*

The district court's September 12, 2023 order denying the defendants' motion to dismiss is reversed, and the case is remanded for proceedings consistent with this opinion.  That the district court lacked personal jurisdiction over the Trivest defendants means that it lacked power to decide their motions to compel arbitration.  We therefore vacate the court's May 23, 2025 order denying those motions.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.  In a civil RICO action, a district court may exercise jurisdiction over a defendant so long as "the ends of justice require" it and the court has traditional personal jurisdiction over at least one other co-defendant.  18 U.S.C. § 1965(b).  In this case, the Michigan district court indisputably had traditional personal jurisdiction over Defendant Jayson Waller.  *See Hall v. Trivest Partners, L.P.*, 2023 WL 5941729, at *7 (E.D. Mich. Sept. 12, 2023).  The court did not, however, have traditional personal jurisdiction over the Trivest co-defendants because all of the Trivest entities are domiciled and maintain their principal places of business in Florida.  To determine if it could nonetheless exercise jurisdiction over the Trivest entities, the court "weigh[ed] a number of factors" and determined that the "ends of justice require[d]" Trivest to be haled into court in Michigan.  *See id.* at *8.  My colleagues in the majority say that this conclusion was a mistake and reverse the district court—without actually explaining what circumstances would justify the exercise of § 1965(b) jurisdiction.  I respectfully dissent from this holding, for the reasons explained below.

According to the majority, § 1965(b) does not allow the district court to exercise jurisdiction over the Trivest Defendants because Plaintiffs have not shown that there is an absolute necessity for this suit to be litigated in Michigan.  My colleagues reach this conclusion because, in their view, the term "require" "conveys a sense of necessity," meaning that "§ 1965(b) permits service on out-of-state defendants only when 'necessary.'"  Op. at 5 (citation omitted).  The majority then determines that the district court did not identify any reasons making it necessary to bring this suit in Michigan.  The district court considered a number of factors in reaching its conclusion that the exercise of jurisdiction under § 1965(b) was appropriate:  "the desirability of having the whole action litigated in one court, the cost of the delay involved in transferring the case to another forum, and the general balance of hardships between plaintiff and defendant."  *Id.* at *8 (cleaned up).  But in the majority's view, these factors cannot justify the exercise of jurisdiction over the Trivest Defendants because they go to

convenience, and § 1965(b) jurisdiction applies only where it is *necessary* that a suit be litigated in a particular court.

The majority misses the mark.  To reach its holding, the majority treats "require" as the most important word in § 1965(b) and interprets "require" to mean, effectively, "necessitates."  It uses this reading to determine that § 1965(b) requires the plaintiff to prove some sort of ill-defined, absolute *need* for the district court to exercise jurisdiction over a foreign defendant.  But that approach distorts the true meaning of the statute.  Section 1965(b) confers jurisdiction where the "*ends of justice* require" it.  (Emphasis added).  As other courts have noted, the "ends of justice language" necessarily conveys "a flexible concept uniquely tailored to the facts of each case."  *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006).  The Supreme Court has cautioned that where "the test is 'the ends of justice' . . . it cannot be too finely particularized."  *Sanders v. United States*, 373 U.S. 1, 17 (1963).  And we have recognized that statutes using the near-identical "in the interest of justice" language "confer broad discretion" on the district court.  *Stanifer v. Brannan*, 564 F.3d 455, 457 (6th Cir. 2009).  In short, read correctly, § 1965(b) allows the district court wide discretion in determining if it is appropriate to exercise jurisdiction over foreign defendants—it imposes no requirement that plaintiffs make a showing that the exercise of jurisdiction is strictly necessary.

Additionally, the meaning prescribed to "require" by the majority is mistaken.  My colleagues state that "require" "conveys a sense of necessity," but according to Webster's Seventh New Collegiate Dictionary, the operative edition at the time § 1965(b) was passed, "require" may mean "to demand as necessary" or it may mean "to call for as suitable or appropriate."  *Webster's Seventh New Collegiate Dictionary* 729 (7th ed. 1970).  It is clear that § 1965(b) uses the second meaning because, in combination with the discretionary and open-ended "ends of justice" language, "require" does not carry the forceful "necessity" connotation.  The more appropriate reading is that jurisdiction may be exercised over foreign defendants if the district court determines that it is suitable and appropriate to do so in service of the ends of justice.

The legislative history of the RICO statute confirms that § 1965(b) confers jurisdiction liberally and that the requirement of a showing of necessity adopted by the majority is

inappropriate. Congress enacted RICO to eradicate "highly sophisticated, diversified, and widespread" organized crime. Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 922, 922-23. Keeping that goal in mind, Congress instructed that RICO's "provisions . . . shall be liberally construed to effectuate its remedial purposes." Pub.L. 91-452, 84 Stat. 947. With respect to the jurisdictional issue, the House Judiciary Committee noted that § 1965 was "modeled on present antitrust legislation." H.R.Rep. No. 91-1549 (1970). That antitrust legislation includes the Sherman Act and Wilson Tariff Act, both of which have jurisdictional provisions that include the "ends of justice require" language. *See* 15 U.S.C. § 5 ("Whenever . . . the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not . . . ."); 15 U.S.C. § 10 (same). In interpreting the "ends of justice require" language, the Supreme Court determined that § 5 conferred jurisdiction over "nonresident defendants" because the district court had traditional personal jurisdiction over one defendant. *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 46 (1911). It imposed no other limitations on the lower courts' ability to exercise jurisdiction and certainly did not hold that the statutory language contained a necessity requirement.

The majority's insistence on reading a necessity requirement into § 1965(b) also appears influenced by its concern that "traditional notions of fair play and substantial justice" would not allow suit against the Trivest Defendants under traditional personal jurisdiction because they do not have minimum contacts with Michigan. Op. at 5 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This concern is misplaced. The goal of § 1965(b) is to expand jurisdiction beyond what would be allowed under traditional personal jurisdiction specifically to effectuate RICO's broad remedial purposes by "giv[ing] RICO its nationwide jurisdictional reach" thus allowing plaintiffs to sue all members of large multistate conspiracies in one court. *Cory*, 468 F.3d at 1235. Put another way, the goal of § 1965(b) is to create an exception to the normal requirement that the exercise of personal jurisdiction over all defendants comport with traditional notions of fair play and substantial justice, so it makes little sense to rely on that principle to cabin § 1965(b)'s jurisdictional reach.

Not only does the majority's holding run contrary to the statute's meaning, it also muddies the jurisdictional requirements of § 1965(b).  The majority determines that the § 1965(b) jurisdictional requirements are not met in this case, but it never establishes what the jurisdictional requirements of § 1965(b) actually are.  The opinion concludes that "when all the defendants . . . are subject to suit in one district, the 'ends of justice' are 'unlikely' to *require* haling nonresident defendants into another district."  Op. at 5 (citation omitted).  But beyond this, the majority offers no guidance as to what circumstances make it "necessary" to exercise jurisdiction under § 1965(b), and thus clear the jurisdictional bar it has invented.  Future litigants are left wondering what precisely they need to show in order to attain jurisdiction under § 1965(b).

Ultimately, it is clear that § 1965(b) gives the district court broad discretion to perform a flexible and open-ended inquiry into whether the ends of justice require it to exercise jurisdiction over the foreign defendants in a RICO action.  In this case, the district court correctly determined that it had jurisdiction over the Trivest Defendants.  Aware that the "ends of justice language" called for a flexible and discretionary inquiry, the district court "weigh[ed] a number of factors" to determine if it could exercise jurisdiction over the Trivest Defendants.  *Hall*, 2023 WL 5941729, at *8.  The district court noted that transfer to Florida would result in "undue delay" and then considered the "general balance of hardships between plaintiffs and defendants" to conclude that Defendants would be minimally burdened by litigating the case in Michigan.  *Id.* The district court's approach and conclusion were correct.  All of the Plaintiffs in this case are Michiganders; they allegedly suffered harm in Michigan, caused by a scheme operated out of Michigan; and Trivest chose to invest money in and thus materially support this allegedly fraudulent scheme in Michigan.  As the majority acknowledges, the Trivest entities were involved in preparing and disseminating allegedly fraudulent advertising materials for the Power Home Solar scheme, which ultimately targeted consumers in Michigan.  Defendants have retained competent counsel to litigate this case in Michigan, and have been doing so since 2022, and they have identified no particular hardship they face by defending their claims in Michigan. It also stands to reason that most of the evidence relevant to this case is related to or located in Michigan.

By contrast, it is not at all clear how this case relates to Florida—where the majority claims this case would be more appropriately litigated.  Waller registered PHS as a business in Florida, but there is no information in the record suggesting that PHS actually conducted any business there or harmed any consumers.  It is also not clear from the record that traditional personal jurisdiction over Defendant Waller exists in Florida—the district court stated in passing that "it appears the entire case could be litigated in Florida," but the record contains no information about Waller's contacts there.  MTD Order, R. 32, PageID #305.  In this case, Plaintiffs' lawsuit seeks to remedy harm inflicted and suffered in Michigan, and Plaintiffs used § 1965(b)'s liberal jurisdictional provision to bring suit in Michigan. Keeping in mind "the general rule" that "the plaintiff is the master of her complaint and gets to choose where and how to sue," Plaintiffs have demonstrated that Michigan is the appropriate location for this suit.  *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019).  The district court was thus correct to conclude that the ends of justice support exercising jurisdiction over the Trivest Defendants in Michigan.

By seeking to hold accountable a Florida private equity fund that allegedly enabled a business to engage in practices that harmed and defrauded consumers in Michigan, Plaintiffs are trying to pursue precisely the remedial aims for which RICO was enacted—to eradicate widespread and sophisticated organized crime schemes.  "That purpose is not furthered by withholding nationwide service of process whenever all of the RICO defendants could be haled into one court" or by imposing other prescriptive and extra-textual roadblocks to jurisdiction, as the majority does.  *Cory*, 468 F.3d at 1232.

Accordingly, I would affirm the district court's determination that § 1965(b) confers jurisdiction over the Trivest Defendants and allow this suit to proceed in Michigan.