PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3758
_____

LAUREL GARDENS, LLC; AMERICAN WINTER SERVICES,
LLC; LAUREL GARDENS HOLDINGS, LLC; LGSM, GP;
CHARLES P. GAUDIOSO,

Appellants


v.


TIMOTHY MCKENNA; MICHAEL MCKENNA; MAT SITE
MANAGEMENT, LLC; BOBBY AERENSON; GREGORY
PETTINARO; CHARLES WILKINSON; WILKINSON
BUILDERS, LLC; TECHNIVATE, INC.; THOMAS DIDONATO;
KEVIN EAISE; EAISE DESIGN & LANDSCAPING, LLC;
EAISE SNOW SERVICES, LLC; HAINES & KIBBLEHOUSE,
INC.; HANK JULICHER; MARGIT JULICHER;
CHRISTOPHER W. WRIGHT; LONGVIEW MANAGEMENT,
LLC; MATTHEW SIBLEY; M&M LANDSCAPING, LLC;
ALAN PERRY; MARY TRESIZE; FRANK ALCARAZ; STRIVE
FORCE, LLC; MJL ENTERPRISES; JOHN HYNANSKI;
NORMAN AERENSON; ISKEN ENTERPRISES, LLC;
FRONTIER MULCH, LLC; LONGVIEW MANAGEMENT, LP;
DON ISKEN; PAUL ISKEN; SAUL EWING, LLP; DAVID
FALCONE; JOHN SNYDER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-17-cv-00570)
Honorable Jeffrey L. Schmehl, District Judge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 22, 2019

BEFORE:  GREENAWAY, JR., PORTER, and COWEN, Circuit
Judges

(Filed: January 14, 2020)
_____

Kevin F. Berry
Tamara S. Grimm
O'Hagan Meyer
100 North 18th Street
Two Logan Square, Suite 700
Philadelphia, PA 19103

   Attorneys for Appellants

Ryan M. Ernst
George Pazuniak
Sean T. O'Kelly
O'Kelly Ernst & Joyce
901 North Market Street
Suite 1000
Wilmington, DE 19801

   Attorneys for Appellees

_____

OPINION OF THE COURT
_____


COWEN, <u>Circuit</u> <u>Judge</u>.

Plaintiffs, Laurel Gardens, LLC ("LG"), American Winter Services, LLC ("AWS"), Laurel Garden Holdings, LLC ("LGH"), LGSM, GP ("LGSM"), and Charles P. Gaudioso, appeal from the order of the United States District Court for the Eastern District of Pennsylvania granting the motion for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) filed by Defendants, Don Isken, Paul Isken, and Isken Enterprises, LLC ("IE") ("the Isken Defendants"). Specifically, the District Court designated its prior order—granting the Isken Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) while denying all but one of the motions to dismiss filed by the other defendants—as its final judgment as to the Isken Defendants. Plaintiffs argue that the District Court erred by applying the traditional requirements for personal jurisdiction as opposed to a specific provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO") authorizing the nation-wide exercise of personal jurisdiction in certain circumstances.

Initially, we conclude that the issue of personal jurisdiction is properly before us and accordingly limit our ruling to this threshold jurisdictional issue. We agree with Plaintiffs that 18 U.S.C. § 1965(b) (and not 18 U.S.C. §1965(d))

3

governs the exercise of personal jurisdiction in this case and that they satisfy the statutory (and constitutional) requirements for the District Court to exercise such jurisdiction over the Isken Defendants. In turn, Plaintiffs' state law claims fall under the doctrine of pendent personal jurisdiction. Accordingly, we will vacate the order entered by the District Court disposing of the parties' dismissal motions to the extent that it granted the Isken Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) as well as the District Court's Rule 54(b) order insofar as it designated this prior order as the final judgment as to the Isken Defendants.

I.

Naming a total of thirty-three defendants, Plaintiffs alleged in their lengthy amended complaint that "[t]he primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past ten (10) calendar years." (JA70.) Plaintiffs alleged predicate acts of bribery, extortionate credit transactions, mail fraud, wire fraud, witness tampering, and retaliation. They then set forth three separate RICO claims, i.e., conduct and participation in an enterprise through a pattern of racketeering under 18 U.S.C. § 1962(c), acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity pursuant to 18 U.S.C. § 1972(b), and conspiracy to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). Finally, the pleading included claims against all defendants under Pennsylvania law for aiding and abetting the breach of fiduciary duty, civil conspiracy, fraud, conversion, negligent

4

misrepresentation, and tortious interference with contract and prospective contractual arrangements (as well as a claim for breach of fiduciary duty against Defendants Timothy McKenna and Michael McKenna).

According to Plaintiffs,[1] the enterprise's primary objective has been to inflict severe economic hardship upon the Plaintiffs with the intent to impair, obstruct, prevent, and discourage them from continuing to work in the field of landscaping and snow removal services. "[A]t the center of [the] criminal enterprise" are Defendants Timothy McKenna and Michael McKenna. (JA77.) Timothy McKenna (a resident of Delaware who maintains a business address in Delaware) was the managing member of LG and AWS until May 2012 (when he was replaced by Gaudioso) and remained a consultant for Plaintiffs until his termination for cause in June 2014. Likewise, Michael McKenna (Timothy McKenna's son and a Pennsylvania resident who maintains a Delaware business address) was the general manager for LG and AWS until he resigned on November 9, 2014. "Timothy McKenna, Michael McKenna, Catherine McKenna (Timothy's wife), and [Defendant] MAT Site Management, LLC (the McKennas' business) sought to steal the Plaintiffs' customers and continue in the business of servicing the commercial landscaping and snow removal needs

---

[1] The amended complaint alleged that LG and AWS are Pennsylvania limited liability companies while LGSM is a Pennsylvania limited liability partnership. The three entities maintain their principal places of business, owned property, and conducted business in Pennsylvania. LGH is a Delaware limited liability company with its principal place of business located in Pennsylvania.

for those customers." (Appellants' Brief at 5-6 (citing JA70).)

It is undisputed that brothers Don Isken and Paul Isken are residents of the State of Delaware and that IE is a Delaware limited liability company with its principal place of business located in Newark, Delaware.[2] The first amended complaint included the following allegations against the Isken Defendants:

**Isken and Isken Enterprises**

134. DON ISKEN and PAUL ISKEN have been associated with TIMOTHY McKENNA for several years. They own several local hotels, specifically the Homewood Suites, Holiday Inn Express, and Comfort Inn in Wilmington, DE.

135. TIMOTHY McKENNA conspired with DON ISKEN and PAUL ISKEN to steal Company assets and labor by delivering loads of salt and calcium at no charge to the ISKEN' [sic] hotels in return for some debt relief to TIMOTHY McKENNA. This was late in the 2014 season when salt and melt products were generally unavailable at any price and the Company's inventory was stretched. TIMOTHY McKENNA and MICHAEL McKENNA also directed snow

---

[2] The amended complaint alleged that IE "is a limited partnership under the laws of the Commonwealth of Pennsylvania" maintaining a business address in Newark, Delaware. (JA74.)

removal services to the hotels and DON ISKEN' [sic] home with no intention of billing DON ISKEN. When the Company learned of this, the Company sent a bill and attempted to collect payment from DON ISKEN and PAUL ISKEN. DON ISKEN and PAUL ISKEN refused to pay advising GAUDIOSO, 'Our deal was with Tim McKenna". When GAUDIOSO pressed as to what that meant, neither DON ISKEN nor PAUL ISKEN would explain.

136. Having loaned TIMOTHY McKENNA a significant amount of money (upwards of $200,000) and TIMOTHY McKENNA being unable to pay it back, DON ISKEN has initiated several Sherriff Goods and Chattel sales on TIMOTHY McKENNA's home. The email trail between TIMOTHY McKENNA and DON ISKEN goes back years and shows TIMOTHY McKENNA promising to pay DON ISKEN and always reneging on payment. Ultimately, DON ISKEN initiated the Sherriff sale and then TIMOTHY McKENNA somehow came up with an amount to get DON ISKEN off his back for a short time. Then the process started again.

137. Counsel for the Company, SNYDER and FALCONE of SAUL EWING were advising TIMOTHY McKENNA on how to handle this situation with ISKEN.

(JA95-JA96.)[3]  Plaintiffs attached several exhibits to their pleading, including an exhibit consisting of documents purportedly relating to the Isken Defendants.  These documents are:  (1) an April 28, 2014 e-mail from Don Isken to Timothy McKenna indicating that Timothy McKenna intended to have his partner in the salt business make a wire transfer in the amount of $103,750 "to each Paul and I" within the next two days, forwarding wiring instructions from Paul Isken, and expressing frustration about the whole process (stating that the amount would only increase and specifically pointing to earlier e-mails in which Timothy McKenna had assured Don Isken that payment was forthcoming) (JA293); (2) a May 2, 2014 e-mail from Don Isken to Timothy McKenna stating that he received a payment of $20,000 instead of the $207,000 he had long expected and Timothy McKenna had absolutely guaranteed he would receive, refusing to accept payment, and indicating that he had no intention to halt the judicial actions (and in particular that he intended to push for a judicial sale of Timothy McKenna's personal belongings at the earliest opportunity); (3) an April 15, 2014 invoice from AWS billing Homewood Suites $12,874 for services related to snow removal, including $10,000 for calcium; and (4) a June 5, 2014 e-mail from Don Isken to Timothy McKenna replying to an e-mail forwarded by Timothy McKenna from Defendant Christopher Wright, inquiring why

---

[3] The amended complaint referred to Plaintiffs as "the Company."  Defendant Saul Ewing, LP "is a Pennsylvania limited partnership engaged in the practice of law with a principal place of business" located in Philadelphia, Pennsylvania, while Defendants David Falcone and John Snyder are engaged in the practice of law at the law firm's office. (JA76.)

8

the Wright e-mail message[4] was sent to him and "[w]hat am I supposed to do with this information and documentation—deposit it in the bank" (JA296).

Fifteen separate motions to dismiss were filed by the respective defendants. In fact, all but one of the defendants (Mary Tresize) moved to dismiss. On May 15, 2017, the Isken Defendants moved to dismiss with prejudice pursuant to Rule 12(b)(2) and Federal Rule of Civil Procedure 12(b)(6). In their memorandum of law, they argued that the District Court must dismiss this action pursuant to Rule 12(b)(2) because it lacks personal jurisdiction over Paul Isken and IE. Under Pennsylvania's long-arm statute providing for personal jurisdiction over non-resident defendants to the fullest extent allowed under the United States Constitution, see 42 Pa. Cons. Stat. Ann. § 5322, the amended complaint purportedly fails to allege either general or specific jurisdiction over Paul Isken and IE. The Isken Defendants further sought dismissal under Rule 12(b)(6) on the grounds that the pleading does not assert a claim against the Isken Defendants upon which relief may be granted, the state law claims are outside the statute of limitations, and the claims are alleged against improper parties. On June 16, 2017, Plaintiffs filed a lengthy omnibus response in opposition to several motions to dismiss, including the Isken Defendants' own motion. In their June 23, 2017 reply brief, the Isken Defendants acknowledged that the Plaintiffs' opposition had responded to

---

[4] The Wright e-mail was entitled "**MJL Salt Deal Summary**" and asked Timothy McKenna not to share the attached documents with anyone because the GSC cost per ton and some of the other small variables had yet to be adjusted. (JA296.)

9

two of their grounds for dismissal (failure to state a claim and statute of limitations). They then addressed the merits of these two grounds. However, the Isken Defendants also pointed out that "Plaintiffs do not respond to the Isken Defendants' arguments for dismissal based on the lack of personal jurisdiction and the naming of an improper party." (E.D. Pa. Docket Entry #97 at 2.) "Pursuant to Local Rule 7.1(c), these arguments are *unopposed*, and the [first amended complaint] should be dismissed by the Court on that basis." (Id. (citing Dennis v. DeJong, 867 F. Supp. 2d 588, 622 (E.D. Pa. 2011); Toth v. Bristol Twp., 215 F. Supp. 2d 595, 598 (E.D. Pa. 2002); Smith v. Nat'l Flood Ins. Program of FEMA, 156 F Supp. 2d 520, 525 (E.D. Pa. 2001)).)

On July 14, 2017, Plaintiffs submitted a motion for leave to file a sur-reply in further opposition to the Isken Defendants' motion to dismiss. Noting that most defendants had filed nearly identical motions to dismiss, "Plaintiffs do not intend to waste this Court's time by repeating its own arguments in a surreply, but does seek leave to briefly address the Isken Defendants' argument that this Court lacks personal jurisdiction over Defendants Paul Isken and [IE]." (E.D. Pa. Docket Entry #108 at 2.) "Plaintiffs respectfully request that this Court exercise its discretion and grant leave to file a surreply to clarify the record and respond to Defendants' jurisdictional arguments." (Id.)

The District Court granted Plaintiffs' motion for leave on July 19, 2017, and the sur-reply was filed on the same day. In addition to responding to the Isken Defendants' argument that the first amended complaint should be dismissed because of Plaintiffs failure to respond on the issue of personal jurisdiction, Plaintiffs argued that the District Court possesses both general

10

and specific jurisdiction over Paul Isken and IE (and also asserted that the affidavits submitted by Paul Isken and Don Isken falsely state that IE has never owned or held any interest in any real property in Pennsylvania). They also argued that the District Court has personal jurisdiction pursuant to the RICO statute as well as the doctrine of pendent personal jurisdiction.

On March 14, 2018, the District Court disposed of the various dismissal motions. All of them were denied with two exceptions, namely, the respective motions to dismiss filed by Defendant MJL Enterprises ("MJL") and the Isken Defendants. The District Court expressed concern that the lengthy pleading violates the requirement to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a), noting that its "302 pages (337 paragraphs with attached exhibits) include[ed] a mass of details which may be relevant and appropriate at summary judgment or trial, but are clearly surplusage in stating a claim at this stage" (JA18). However, it found "Plaintiffs' claims survive a Rule 12(b)(6) challenge." (Id.) "Defendant MJL moves to dismiss arguing venue is improper here because the terms of the settlement agreement between MJL and Laurel Gardens expressly provides each of the Parties involved in the agreement (MJL and Laurel Gardens) consents to jurisdiction in the Eastern District of Virginia." (Id. (citing E.D. Pa. Docket Entry #60).) While concluding that venue is proper under 28 U.S.C. § 1391, the District Court transferred the claims against MJL to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404. Finally, the District Court agreed with the Isken Defendants that it lacks both specific and general jurisdiction over them. It looked to Pennsylvania's long-arm statute and the Fourteenth Amendment's contacts test. "Applying the above principles,

11

this Court concludes the Iskens lack the requisite 'minimum contacts' with Pennsylvania to the exercise of jurisdiction over them. Walden v. Fiore, 134 S. Ct. 1115, 1124 (2014). Therefore, this Court lacks specific jurisdiction." (JA22.) The District Court also found that the Isken Defendants also do not possess the continuous and systematic contacts with the forum state required for the exercise of general jurisdiction. "Accordingly, the Iskens' Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) is granted. The Iskens are dismissed from this matter." (JA23.)

On May 17, 2018, the Isken Defendants moved for entry of final judgment pursuant to Rule 54(b). The District Court granted this motion on November 20, 2018, determining that "the Order is a final judgment as to Defendants Don Isken, Paul Isken, and Isken Enterprises, LLC for the purposes of Federal Rule of Civil Procedure 54(b), and no just cause exists for delaying entry of final judgment in this matter as to Defendants Don Isken, Paul Isken, and Isken Enterprises, LLC." (JA15.)

II.

In addition to some disagreement as to what issues are properly before us, this appeal implicates a question of first impression for this Court, namely, whether 18 U.S.C. § 1965(b) or 18 U.S.C. §1965(d) governs the exercise of personal jurisdiction in this case.[5] Federal Rule of Civil Procedure 4(k)

---

[5] The District Court had subject matter jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331 and over the state law claims under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

12

sets forth the "Territorial Limits of Effective Service" and provides that "(1) [i]n general. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located." This subsection implicates the traditional contacts-based approach to personal jurisdiction, and it was this traditional approach that the District Court applied. However, Rule 4(k)(1)(C) includes an alternative: serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant "when authorized by a federal statute." RICO includes a specific provision entitled "Venue and Process," which states:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has

---

Whether personal jurisdiction may be exercised over an out-of-state defendant poses a question of law triggering a plenary standard of review. See, e.g., Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 329 (3d Cir. 2009). "Although the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), in reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.' Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

13

an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas [sic] issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpoena [sic] shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965. We conclude that subsection (b) (and not subsection (d)) applies here. In turn, Plaintiffs satisfy the

14

statutory (and constitutional) requirements for the exercise of personal jurisdiction over the Isken Defendants. Furthermore, Plaintiffs' state law claims then fall under the doctrine of pendent personal jurisdiction.

## A. The Issues on Appeal

Initially, the parties disagree over the issue or issues that are properly before us on this appeal. On the one hand, the Isken Defendants insist that Plaintiffs waived the issue of personal jurisdiction under RICO by not raising this statutory issue before their sur-reply. Instead of responding to Plaintiffs' § 1965 arguments, the Isken Defendants go on to argue at some length that the RICO claims fail as a matter of law and that "therefore the District Court has no personal jurisdiction over the Isken Defendants." (Appellees' Brief at 4 ("Absent the RICO claims, subject matter jurisdiction for the district court over nonfederal claims is lost – making personal jurisdiction a moot question, as under [Plaintiffs'] argument, personal jurisdiction only obtains in this case under 18 U.S.C. § 1965.").) They also contend that the state law claims are legally deficient and barred by the statute of limitations and that IE is not a proper defendant. On the other hand, Plaintiffs contend that this Court lacks the jurisdiction to consider the substantive issues raised by the Isken Defendants' appellate brief because they were never addressed by the District Court and, in any event, no notice of cross-appeal was ever filed. With respect to the merits of these substantive issues, Plaintiffs "will simply refer to and incorporate by reference their Omnibus Response in the district court, which addressed the Isken Defendants' and many other defendants' substantive arguments" (and they request leave to file a full brief addressing the substantive issues if the Court

15

were to entertain them). (Appellants' Reply Brief at 6 and 8 (citing E.D. Pa. Docket Entry #91).)

We agree with Plaintiffs that the issue of personal jurisdiction under the RICO provision is properly before us. Under the circumstances, we also limit our ruling to this threshold jurisdictional issue under Rule 12(b)(2) and therefore refrain from considering whether Plaintiffs fail to state a claim upon which relief can be granted under Rule 12(b)(6).

It is well established that, in the absence of exceptional circumstances, this Court will not consider issues raised for the first time on appeal. See, e.g., In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 261-62 (3d Cir. 2009). "For an issue to be preserved for appeal, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" Id. at 262 (quoting Shell Petroleum, Inc. v. United States, 182 F.3d 212, 218 (3d Cir. 1999)).

Plaintiffs did not address the question of personal jurisdiction—whether under the traditional contacts test or a specific federal statutory provision authorizing the nation-wide exercise of personal jurisdiction—until they moved for leave to file a sur-reply. However, the District Court granted their motion and ordered Plaintiffs to file their sur-reply—which they did. While the Isken Defendants assert that such filings are normally granted only when the preceding reply brief raises new matter or arguments and that they were deprived "of opportunity to further respond" (Appellees' Brief at 13), the Isken Defendants did not oppose or otherwise object to Plaintiffs' successful motion for leave to file the sur-reply. Given the

months that passed between the authorized filing of the sur-reply to the motion to dismiss and the District Court's disposition of the dismissal motion itself, the issue was clearly presented to the District Court at a point and in a manner to permit it (and the Isken Defendants) to consider its merits. Unfortunately, the District Court's dismissal order did not address the issue of personal jurisdiction under the RICO provision. But this omission (like the Plaintiffs' failure to address personal jurisdiction in their omnibus response) was evidently nothing more than an understandable oversight in a complicated case involving more than thirty defendants filing multiple (and often-overlapping) motions to dismiss and where the Isken Defendants were the only parties to seek dismissal for lack of personal jurisdiction. After all, the District Court did not (as the Isken Defendants appear to suggest) indicate that it was "dismissing the Isken Defendants based on lack of timely opposition to the Isken Defendants' Motion to Dismiss and Local Rule of Civil Procedure 7.1(c)"[6] (id. at 12). On the contrary, the District Court considered the Isken Defendants' arguments about the lack of general and specific jurisdiction and determined that they do not possess the requisite contacts with the forum state for jurisdiction on such grounds. It did so even though the Isken Defendants had pointed out in their reply brief that the Plaintiffs' omnibus response did not respond to their arguments about general and specific jurisdiction and asked the District Court to dismiss the first amended complaint as uncontested

---

[6] Eastern District of Pennsylvania Local Rule 7.1(c) states that, "[i]n the absence of timely response, the motion may be granted as uncontested except as provided under Fed.R.Civ.P [sic] 56."

17

pursuant to Local Rule 7.1(c).[7]

We likewise limit our ruling to this threshold issue of personal jurisdiction.  Generally, we may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the district court overlooked it or it involves an attack on the district court's reasoning.  See, e.g., TD Bank N.A. v. Hill, 928 F.3d 259, 270 (3d Cir. 2019); EF Operating Corp. v. Am. Buildings, 993 F.2d 1046, 1048 (3d Cir. 1993).    However, the District Court granted the Isken Defendants' motion under Rule 12(b)(2) for "lack of personal jurisdiction"—and not pursuant to Rule 12(b)(6) for "failure to state a claim a claim upon which relief can be granted." Cf, e.g., EF Operating, 993 F.2d at 1048-49 (distinguishing between dismissal for lack of personal jurisdiction and grant of summary judgment on merits and concluding that, where appellant files appeal from summary judgment, appellee must cross-appeal to

---

[7] According to the Isken Defendants, Plaintiffs could have addressed the District Court's dismissal of the Isken Defendants on personal jurisdiction grounds by filing a timely motion for reconsideration.  At least in retrospect, such a motion would have been an appropriate and efficient way to emphasize to the District Court—and obtain a ruling on—the issue of personal jurisdiction under the RICO provision before the case went forward against the other defendants (and the order was certified as a final judgment under Rule 54(b) as to the Isken Defendants).  However, the Isken Defendants do not indicate that such a motion is required for us to consider the issue of personal jurisdiction on appeal.  We also note that the Isken Defendants did not seek reconsideration of the order granting Plaintiffs' motion for leave to file the sur-reply.

18

contest denial of motion to dismiss for lack of personal jurisdiction). In fact, the District Court denied the various Rule 12(b)(6) motions to dismiss "referenced in the above Order," finding that "Plaintiffs' claims survive a Rule 12(b)(6) motion." (JA18.) At this stage:

> [A]ccepting Plaintiffs' lengthy allegations as true, this Court concludes that Plaintiffs raise a plausible right to relief. Whether Plaintiffs have a claim for aiding and abetting breach of fiduciary duty, civil conspiracy, RICO, fraud, breach of fiduciary duty, conversion, negligent misrepresentation, and tortious interference, is best decided on a full factual record of a Rule 56 motion.

(Id.) [8] We also do not overlook the procedural posture of Plaintiffs' current appeal. The District Court designated its interlocutory order as a final judgment as to the Isken Defendants pursuant to Rule 54(b). In their successful Rule 54(b) motion, the Isken Defendants acknowledged that "Plaintiffs' claims against the remaining defendants are continuing, with written discovery scheduled to conclude on June 1, 2018." (E.D. Pa. Docket Entry #195-1 at 2 (citing E.D.

---

[8] Transferring the MJL claims, the District Court observed that, "[b]ecause MJL and Laurel Gardens agreed to the Eastern District of Virginia as their forum, this Court does not address the merits of MJL's motion to dismiss for failure to state a claim." (JA21.) The District Court did not make this sort of statement in its discussion of the Isken Defendants' motion to dismiss.

19

Pa. Docket Entry #158 at ¶ 1) (noting no trial date has been set).)  They emphasized the fact that they "were the only defendants dismissed in the action on the basis of personal jurisdiction, and the basis for their dismissal is factually unique to them."  (Id. at 5.)  Under these circumstances, we limit ourselves to this "unique" basis.[9]

## B.  Personal Jurisdiction under the RICO Provision

There is a circuit split regarding which specific subsection of the RICO provision governs the exercise of personal jurisdiction in this case.  Plaintiffs recognize that two circuits (the Fourth and the Eleventh Circuits) have looked to § 1965(d).  According to the Eleventh Circuit, "Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found."  Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997).  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."  Id. (citing In re Chase & Sanborn Corp., 835 F.2d 1341, 1344 (11th Cir. 1988), rev'd on other grounds sub nom. Granfianciera, S.A. v. Nordberg, 492 U.S. 33 (1989); Lisak v. Mercantile Bancorp Inc., 834 F.2d 668, 671 (7th Cir. 1987)).  Citing Republic of Panama, the Fourth Circuit reached the same conclusion.  ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617,

---

[9]  Plaintiffs argue that the District Court erroneously dismissed the claims against Don Isken because he (unlike Paul Isken and IE) did not seek dismissal based on the absence of personal jurisdiction.  We do not address this argument because we determine that the District Court possesses personal jurisdiction over all three of the Isken Defendants.

626 (4th Cir. 1997). Five circuits (the Second, Seventh, Ninth, Tenth, and D.C. Circuits) have stated that subsection (b) governs nation-wide service of process and personal jurisdiction over "other parties."[10] See FC Inv. Grp. v. IPX Markets, Ltd., 529 F3d 1087, 1098-1100 (D.C. Cir. 2008) Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229-33 (10th Cir. 2006); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 70-72 (2d Cir. 1998); Lisak, 834 F.2d at 671-72; Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538-39 (9th Cir. 1986).

We agree with the majority approach. We do so based on the language and structure of the RICO provision itself as well as the relative absence of reasoning in support of the minority position. The history of the legislation and our own prior case law provide further support for this majority approach.

---

[10] We note that the Seventh Circuit has pointed (in passing) to subsection (d) as authorizing nation-wide service of process. See Cent. States, Se. & Sw. Areas Pension Funds v. Reimer Express World Corp., 230 F.3d 934, 940-41 (7th Cir. 2000); Robinson Eng'g Co. Pension Plan & Tr. v. George, 223 F.3d 445, 449 & n.1 (7th Cir. 2000). However, there are other Seventh Circuit decisions pointing to subsection (b) (including Lisak, which did address the statutory provision with a little more depth than either Central States or Robinson Engineering)). See Lisak, 834 F.2d at 671-72; Stauffacher v. Bennett, 969 F.2d 4455, 460-61 (7th Cir. 1992), superseded by rule on other grounds as stated in Cent. States, 230 F.3d at 938. Robinson Engineering also cited to Stauffacher's reference to subsection (b). Robinson Eng'g, 223 F.3d at 449 (citing Stauffacher, 969 F.2d at 460-61).

"The first federal appellate court to actually analyze § 1965's full text and offer reasoning for its choice of subsections was the Second Circuit" in PT United. Cory, 468 F.3d at 1230 (footnote omitted). The Second Circuit persuasively explained the function of each subsection as part of a single coherent framework for RICO actions. See, e.g., FC Inv., 529 F.3d at 1099 ("Having considered the arguments of the parties, as well as the reasoning of our sister circuits on the question, we are persuaded to adopt the Second Circuit's reasoning."); Cory, 468 F.3d at 1231 ("We find [the Second Circuit's] reasoning persuasive and consistent with congressional intent." (footnote omitted)). Specifically:

> Section 1965 makes sense only if all of its subsections are read together. Neither the district court's opinion nor the briefing of the parties discusses § 1965(a) and (c), but we find these sections to be equally important to a coherent understanding of the meaning and functioning of the statute, particularly for the purpose of interpreting the terms "other parties" and "other process" in §§ 1965(b) and (d), respectively.

> Reading all of the subsections of § 1965 together, the court finds that § 1965 does not provide for nationwide jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found. First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other

22

words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.

Second, § 1965(b) provides for nationwide service and jurisdiction over "other parties" not residing in the district, who may be additional defendants of any kind, including co-defendants, third-party defendants, or additional counter-claim defendants. This jurisdiction is not automatic but requires a showing that the "ends of justice" so require. This is an unsurprising limitation. There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first preference, as set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora.

PT United, 138 F.3d at 71-72 (footnote omitted). Going further, subsection (c) "simply refers to service of subpoenas on witnesses"—specifically in civil or criminal actions or proceedings instituted by the government. Id. Finally, "subsection (d)'s reference to '"all other process"' must mean process different than a summons or a government subpoena, both of which are dealt with in previous subsections." Cory, 468 F.3d at 1230 (quoting PT United, 138 F.3d at 72). As the Second Circuit explained:

23

This interpretation, one which gives meaning to the word 'other' by reading sequentially to understand 'other' as meaning 'different from that already stated in subsections (a)-(c),' gives coherent effect to all sections of § 1965, and effectively provides for all eventualities without rendering any of the sections duplicative, without impeding RICO actions and without unnecessarily burdening parties.

PT United, 138 F.3d at 72 ("We conclude that the natural reading given to § 1965(b) by the 9th Circuit in Butcher's Union and the district court here was correct, and that this conclusion is borne out by a complete reading of the statute, a course of action which has not been followed by the courts that have read § 1965(d) in isolation to reach the opposite conclusion.").

In contrast, the circuit courts adopting the minority approach did not offer a detailed explanation for their selection of subsection (d). The Eleventh Circuit "did 'not pause long over . . . the question,' and oddly, it cited Lisak [which identified subsection (b) as creating personal jurisdiction] for support." Cory, 468 F.3d at 1230 (quoting Republic of Panama, 119 F.3d at 942); see also, e.g., PT United, 138 F.3d at 70 ("[A]nother circuit court stated in conclusory terms that § 1965(d) provides for nationwide service of process." (citing Republic of Panama, 119 F.3d at 942)). Without mentioning subsection (b), the Fourth Circuit indicated that subsection (a) authorizes venue while subsection (d) authorizes service of process "evidencing Congress' desire that '[p]rovision [be] made for nationwide venue and service of process.'" ESAB Grp., 126 F.3d at 626 (quoting H. Rep. No. 91-1549, at 4

24

(1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4010); see also, e.g., Cory, 468 F.3d at 1230 (noting that Fourth Circuit did not mention contrary position of Seventh and Ninth Circuits).

In fact, the history of the RICO provision provides additional support for the majority approach. In the report cited by the Fourth Circuit, the House Judiciary Committee stated that "[s]ubsection (b) provides nationwide service of process on parties, if the ends of justice require it, in actions under Section 1964" while "[s]ubsection (d) provides that all other process in actions under the chapter may be served wherever the person resides, is found, has the agent, or transacts his affairs." 1970 U.S.C.C.A.N. at 4010 (further stating that subsection (a) establishes venue for civil proceedings while subsection (c) provides for nationwide subpoena power for witnesses in civil or criminal proceedings but requires good cause for issuance if witness in civil action resides in another district and at place more than 100 miles from court). The committee further explained that "[S]ection 1965 contains broad provisions regarding venue and process, which are modeled on present antitrust legislation." Id.; see also, e.g., Cory, 468 F.3d at 1231 (discussing committee report). For instance, the Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. Like the RICO provision, the Clayton Act then authorizes "other parties" to be served if "the ends of justice" so require:

The several district courts of the United States are

25

invested with jurisdiction to prevent and restrain violations of this Act, and it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. . . . Whenever it shall appear to the court before which any such proceeding may be pending that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned whether they reside in the district in which the court is held or not, and subpoenas to that end may be served in any district by the marshal thereof.

15 U.S.C. § 25; accord 15 U.S.C. §§ 4, 5 (Sherman Act); 15 U.S.C. §§ 9, 10 (Wilson Tariff Act). The Fourth Circuit appropriately turned to Justice Jackson's summary of the antitrust statutory scheme in which he explained that, before "'other parties'" may be properly served, "'it must be made to appear to the court that the ends of justice require that they be brought before the court, in which case they may be summoned from any district.'" Cory, 468 F.3d at 1231 (quoting United States v. Nat'l City Lines, 334 U.S. 573, 598 (1948) (Jackson, J., concurring in result), superseded by statute on other grounds as stated in Trotter v. 7R Holdings, 873 F.3d 435 (3d Cir. 2017)).

Finally, we previously identified § 1965(b) as the subsection governing service of process and personal jurisdiction in this context. In explaining why a venue provision applicable to civil forfeiture proceedings, see 18 U.S.C. § 981(h), does not authorize nation-wide service of process (and

26

thereby would not permit the district court to exercise *in rem* jurisdiction where the *res* is located outside the district), we observed that Congress has recognized in other instances the utility of a specific provision authorizing nation-wide service of process. United States v. Contents of Account No. 3034504504, 971 F.2d 974, 982 (3d Cir. 1992). We offered subsection (b) of the RICO statutory provision and the Sherman Act as examples of legislation expressly authorizing nation-wide service:

> Aside from the Commodity Exchange Act, Congress has expressly provided for nationwide service of process in the civil Racketeer Influenced and Corrupt Organizations Act, *see* 18 U.S.C.A. § 1965(b) (West 1984), the Securities Act of 1933, see 15 U.S.C.A. § 77v(a) (West Supp. 1992), the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa (West Supp. 1992), and the Employee Retirement Income Security Act, see 29 U.S.C.A. § 1132(e)(2) (West 1985). See [United States v. 11205 McPherson Lane, 754 F. Supp. 1483, 1488 (D. Nev. 1991).]; see also Lea Brillmayer & Charles Norchi, Federal Extraterritoriality and Fifth Amendment Due Process, 105 Harv. L. Rev. 1217, 1220 n.14 (1992) (noting nationwide service of process provided for in Arbitration Act, 9 U.S.C.A. § 9 (West 1970) and Sherman Act, 15 U.S.C.A. § 5 (West 1973); Howard M. Erichson, Note, Nationwide Personal Jurisdiction in All Federal Question Cases:  A New Rule 4, 64 N.Y.U. L. Rev. 1117, 1123 n.30 (1989) (listing another twelve nationwide statutes providing for

27

nationwide service of process). . . .

Id. Plaintiffs acknowledge that this Court "did not squarely address the question [now before us] and it was simply a passing reference in a string citation." (Appellants' Brief at 19.) However, this reference, brief as it may be, should not be overlooked out of hand—especially where it is consistent with the statutory language and structure, the existing case law, and the history of the statutory provision at issue.

Accordingly, "[w]hen a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice." Cory, 468 F.3d at 1226. Plaintiffs assert that there are two requirements that must be satisfied under subsection (b) "to establish personal jurisdiction over a defendant not meeting the minimum contacts requirements." (Appellants' Brief at 23.) According to Plaintiffs, these requirements are: (1) "[a]t least one of the other defendants must meet the traditional personal jurisdiction requirements" (id. at 24); and (2) "[t]he 'ends of justice' must require that the district court in this case is the one in which this case should be tried" based on "the statutory language in Section 1965(b), which courts have held to require 'that there is no other district in which a court will have [traditional] personal jurisdiction over all of the alleged co-conspirators'" (id. (quoting Butcher's Union, 788 F.2d at 539).

The structure of § 1965 as well as the "other parties" language of subsection (b) clearly require the presence of at least one defendant that meets the traditional contacts test. With the apparent exception of the Seventh Circuit, see Lisak, 834

28

F.3d at 671-72, the circuit courts following the majority approach have adopted this requirement. See FC Inv., 529 F.3d at 1098-1100; Cory, 468 F.3d at 1229-33; PT United, 138 F.3d at 70-72; Butcher's Union, 788 F.2d at 538-39.

As Plaintiffs recognize, the Ninth Circuit held that the plaintiff must also establish that there is no other district court that would have traditional personal jurisdiction over all of the defendants. Butcher's Union, 788 F.3d at 53. As the Seventh Circuit put it, "Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise." Lisak, 834 F.3d at 672. "A district court in Indiana will have that jurisdiction whether or not Widmar can be brought before the court in Illinois, so perhaps the ends of justice do not 'require' his presence in this suit." Id. We note, however, that the Tenth Circuit rejected the Butcher's Union requirement, instead holding "that the 'ends of justice' analysis is not controlled by the fact that all defendants may be amendable to suit in one forum." Cory, 468 F.3d at 1232. The Cory court did not "offer a competing definition, as the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." Id. "And in the current case, we have Cory's assertion that the ends of justice require nationwide service simply because he has sustained damages and litigation costs in Kansas. We conclude, as a matter of law, that such facts, standing alone, do not satisfy the 'ends of justice' standard." Id. (noting that plaintiff did not claim financial impediment to suit in defendants' home state). Furthermore, the Second and D.C. Circuits have refrained from deciding what the "ends of justice" require. FC Inv., 529 F.3d at 1100 & n.14 (refraining from opining on meaning of "ends of justice" language because district court lacked traditional personal

jurisdiction over sole defendant); <u>PT United</u>, 138 F.3d at 72 n.5 ("As indicated, the statute does not specify what 'the ends of justice' are, but, as indicated, UCC does not challenge the district court's finding that the ends of justice do not in this case require § 1965(b) jurisdiction over the individual defendants. The district court followed <u>Butcher's Union</u>, 788 F.2d at 538-39, in finding 'the ends of justice' to refer to a case in which there is no district with personal jurisdiction over all defendants. Because the individual defendants work in Pennsylvania for Pennsylvania corporation Crown, the district court found that the ends of justice did not require personal jurisdiction over the individual defendants in New York under § 1965(b)."). Nevertheless, the parties in this case do not recognize this conflict. We need not—and do not—decide whether the Ninth or the Tenth Circuit is correct because, as we explain below, Plaintiffs establish both that no other district would have traditional jurisdiction over all defendants and that the exercise of jurisdiction satisfies a flexible understanding of the "ends of justice."[11]

We are satisfied that Plaintiffs satisfy the statutory requirements—which the Isken Defendants themselves do not brief on appeal. While alleging a multi-state scheme implicating several Delaware and New Jersey defendants (and one Virginia defendant (MJL)), Plaintiffs identify roughly half of the thirty-three defendants as Pennsylvania residents or Pennsylvania entities with their respective places of business in Pennsylvania.

---

[11] We likewise need not—and do not—decide whether a plaintiff must specifically allege "a multidistrict conspiracy" or "single nationwide RICO conspiracy" encompassing the defendants. <u>See, e.g.</u>, <u>Butcher's Union</u>, 788 F.2d at 539.

Except for the Isken Defendants, none of the defendants moved to dismiss on the grounds of a lack of personal jurisdiction (not even MJL, which did move on venue grounds). As the District Court recognized in its venue discussion, "almost all other parties are Pennsylvania residents." (JA20.) "Plaintiffs' allegations focus on a 'hub-and-spoke conspiracy' between the McKennas and all named Defendants against Plaintiffs" (JA19), and "[e]vents giving rise to this action – the hub-and-spoke conspiracy – are centered in Pennsylvania" (JA20). Specifically, "three of the four business-Plaintiffs [LG, AWS, and LGSM] are Pennsylvania entities (two LLCs and one general partnership), one [LGH] is a Delaware LLC, all have principal or registered places of business within Pennsylvania, and three [LG, AWS, and LGSM] conducted business within Pennsylvania." (Appellants' Brief at 28 (citing JA70).) In fact, the amended complaint alleged that, while Timothy McKenna is believed to be a resident of Delaware, his son (the other person at the alleged center of the conspiracy), Michael McKenna, is believed to be a Pennsylvania resident. According to the Plaintiffs' pleading, "TIMOTHY McKENNA and MICHAEL McKENNA also directed snow removal services to the [Isken Defendants'] hotels and DON ISKEN' [sic] home with no intention of billing DON ISKEN." (JA95-JA96.) Furthermore, "[c]ounsel for the Company, SNYDER and FALCONE of SAUL EWING were advising TIMOTHY MCKENNA on how to handle this situation with ISKEN." (JA96.) Allegedly, Saul Ewing is a Pennsylvania limited partnership with its principal place of business located in Philadelphia, Pennsylvania, while Snyder and Falcone maintain their offices at that location. Considering this Pennsylvania focus, no other district court would have had traditional jurisdiction over all of the numerous defendants in this action. Given the obvious proximity between

31

Delaware and the Eastern District of Pennsylvania, "exercising personal jurisdiction over the Isken Defendants in this case does not compromise the Second Circuit's recognition of Congress's preference 'to avoid, where possible, haling defendants into far flung fora.'" (Appellants' Brief at 29 (quoting PT United, 138 F.3d at 72).) In the end, Plaintiffs alleged that at least one Pennsylvanian is "at the center of a criminal enterprise" (JA77) targeting Pennsylvania plaintiffs and involving numerous other Pennsylvania defendants as well as several defendants from neighboring states. Under the circumstances, the "ends of justice" call for the exercise of jurisdiction over the three out-of-state Isken Defendants.

"Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process." Cory, 468 F.3d at 1229 (citing Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000)); see also, e.g., In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 297-99 (3d Cir. 2004); Pinker, 292 F.3d at 368-71. Having determined that "the ends of justice require" the Isken Defendants "be brought before" the District Court under § 1965(b), we have no difficulty concluding that the District Court's exercise of personal jurisdiction over them comports with the Fifth Amendment. In this context, we are not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole. See, e.g., Automotive Refinishing, 358 F.3d at 297-99; Pinker, 292 F.3d at 368-71. Don Isken and Paul Isken are both Delaware residents while IE is a Delaware limited liability company with its principal place of business in Newark, Delaware. "Once

minimum contacts have been established, we assess whether the exercise of personal jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" Pinker, 292 F.3d at 370 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (noting, inter alia, existence of dispute not raised by parties as to whether fairness prong of analysis applies in context of federal statute authorizing nation-wide service of process and stating that we need not concern ourselves with propriety of litigating in district court at issue vis-à-vis other district courts); see also, e.g., ESAB Grp., 126 F.3d at 626-27; Republic of Panama, 119 F.3d at 942-48. Unlike the traditional approach, this inquiry focuses less on federalism concerns and more on the national interest in furthering the policies of the federal statute at issue. See, e.g., Pinker, 292 F.3d at 370.

The District Court's exercise of personal jurisdiction over defendants from a neighboring state does not offend traditional notions of fair play and substantial justice. "[W]e believe that the national interest in furthering the policies of the [federal anti-racketeering statute enabling a single district court to exercise personal jurisdiction over all defendants] militates in favor of exercising personal jurisdiction over [the Isken Defendants]." Id. at 372; see also, e.g., ESAB Grp., 126 F.3d at 627 (concluding that exercise of jurisdiction comported with Fifth Amendment because of absence of any evidence of such extreme inconvenience or unfairness as would outweigh congressionally articulated policy and that dictates of judicial efficiency did not so strongly weigh against forum that constitutional due process would be offended); Republic of Panama, 119 F.3d at 948 (finding that defendants failed to present compelling case that litigating action in forum would put them at severe disadvantage because defendants were large

corporations providing banking services to customers in major metropolitan areas along eastern seaboard, fact they may have no significant contact with Florida was insufficient to render forum state unreasonably inconvenient, necessity of world-wide discovery indicated that Florida was no more inconvenient than any other district, and defendants presented no evidence that ability to defend would be significantly compromised); Lisak, 834 F.2d at 672 ("Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise.").

## C. Pendent Personal Jurisdiction

In addition to the RICO claims, Plaintiffs asserted several state law claims against the defendants (including the Isken Defendants). We agree with Plaintiffs that the doctrine of pendent (or supplemental) personal jurisdiction applies in this case.

This Court recognized the notion of pendent personal jurisdiction more than forty years ago in Robinson v. Penn Central Co., 484 F.2d 553 (3d Cir. 1973). We explained:

> Analysis should begin, we think, with the fact that in the Securities Act of 1933 and the Securities Exchange Act of 1934 Congress has bestowed upon the United States District Courts the power to extend their writ extraterritorially so as to compel a personal appearance before them. Once the defendant is before the court, it matters little, from the point of view of procedural due process, that he has become subject to the court's

34

ultimate judgment as a result of territorial or extraterritorial process. Looked at from this standpoint, the issue is not one of territorial in personam jurisdiction— that has already been answered by the statutes--but of subject matter jurisdiction. It is merely an aspect of the basic pendent jurisdiction problem. In United Mine Workers v. Gibbs, [383 U.S. 715 (1966)], the Supreme Court recognized that a discretionary approach should be taken in considering whether to entertain pendent claims. Justification for entertaining such claims ". . . lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . ." [383 U.S. at 726]. Moreover, while the issue of power to entertain a suit for an in personam judgment on a pendent state law claim will ordinarily be resolved on the pleadings, the court remains free throughout the proceedings to dismiss such a claim if that seems the fairer course. [Id. at 727.] In this case, recognizing that Cabot was properly before it by virtue of extraterritorial service authorized by two federal statutes, the district court properly weighed considerations of judicial economy, convenience and fairness, and concluded that it would entertain the pendent claims. That course was within its power and the district court will also have power to dismiss the pendent claims in the future as noted above.

Id. at 555-56. Acknowledging that the supplemental jurisdiction statute codified Gibbs, see 28 U.S.C. § 1367, the Fourth Circuit applied this approach to RICO and related state law claims. See ESAB Grp., 126 F.3d at 627-29.

While they argue in passing that the District Court lacks subject matter jurisdiction over the Pennsylvania state law claims in the absence of the RICO claims, the Isken Defendants do not dispute that the state law claims "are so related to" the claims under RICO "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Furthermore, they do not suggest that the District Court would decline to exercise its jurisdiction over these claims pursuant to the factors set by Gibbs and 28 U.S.C. § 1367(b). In fact, the District Court denied the various motions to dismiss the RICO claims under Rule 12(b)(6). See § 1367(c)(3) ("the district court has dismissed all claims over which it has original jurisdiction"). "Since the court has personal jurisdiction over the defendants under service of process authorized by the Federal Rule of Civil Procedure [4(k)(1)(C)] and by the RICO statute, we can find no constitutional bar to requiring the defendants to defend the entire constitutional case, which includes both federal and state claims arising from the same nucleus of facts." ESAB Grp., 126 F.3d at 629.

III.

For the foregoing reasons, we will vacate the order entered by the District Court disposing of the parties' dismissal motions to the extent that it granted the Isken Defendants' motion to dismiss for lack of personal jurisdiction under Rule

36

12(b)(2) as well as the District Court's Rule 54(b) order insofar as it designated this prior order as the final judgment as to the Isken Defendants.  This matter will be remanded to the District Court for further proceedings consistent with our opinion.