NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1425
_____

UNITED STATES OF AMERICA

v.

JUAN SEGUNDO PANDO-AUCAY
a/k/a Segundo J. Pando
a/k/a Juan Segundo Pando Aucay,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 1-19-cr-00125-001)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 22, 2020
_____

Before: CHAGARES, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Opinion Filed: December 15, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Before this Court is appellant Juan Pando-Aucay's appeal from the District Court's denial of his motion to dismiss his indictment charging him with illegally reentering the United States in violation of 8 U.S.C. § 1326(a). Pando-Aucay argues that the indictment is invalid because the immigration court that entered the original order of removal lacked jurisdiction over the underlying removal proceeding because the notice to appear ("NTA") was deficient.

For the reasons set forth below, we will affirm.[1]

## Discussion[2]

While engaged in an unrelated fugitive operation on July 31, 2006, Immigration and Customs Enforcement ("ICE") officers encountered Pando-Aucay at his Riverside, New Jersey residence. Upon admitting to being in the country illegally, Pando-Aucay was remanded to a detention center in Elizabeth, New Jersey. The same day, Pando-Aucay was served with an NTA that showed Pando-Aucay's address as Pompano Beach,

---

[1] While we are affirming the judgment of the District Court, we do so on different bases than those set forth by the District Court. "Generally, we may affirm on any ground supported by the record[.]" *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116 (3d Cir. 2020).

[2] The District Court had jurisdiction pursuant to 18 U.S.C. §3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Florida and provided a hearing location of Elizabeth, New Jersey.[3]  At some point, the

NTA was amended to reflect a hearing location of Pompano Beach, Florida.[4]

This change in hearing location forms the basis of Pando-Aucay's argument

regarding the validity of the NTA.  He contends that the government never served him

with the amended NTA, instead attaching the certificate of service from the first NTA to

the second NTA.  Specifically, he argues that

> It is undisputed that after transferring Pando-Aucay from a detention
> facility in New Jersey to the Broward Transitional Center (BTC) in Florida
> in August, the government altered the original NTA by changing the
> location of the immigration court from New Jersey to Florida.  Further, the
> government never served Pando-Aucay with that amended NTA.  This is
> evidenced by the fact that the government attached the *original July*
> certificate of service to the amended NTA rather than a new certificate of
> service dated after his transfer to Florida in August.

Appellant's Br. 4 (internal citations omitted) (emphasis in original).

The District Court agreed that Pando-Aucay was never served with the amended

NTA, noting that the certificates of service for both NTAs had "identical signatures for

---

[3] Pando-Aucay was transferred to the detention center in Pompano Beach, Florida, on August 8, 2006.

[4] The date on the certificate of service for both NTAs is July 21, 2006, which we assume is a typographical error since Pando-Aucay was apprehended on July 31, 2006 and both NTAs are dated July 31, 2006.  Since Pando-Aucay was transferred to Florida on August 8, 2006, we can surmise that the amendment occurred prior to that date because the same immigration officer, Mark Szalczyk, signed both certificates of service.  Mr. Szalczyk is one of the immigration officers who apprehended Pando-Aucay in New Jersey.

[Pando-Aucay], and the same name and signature for the Immigration officer who served [Pando-Aucay] with the original charging document." App. 24.

We cannot agree.[5] Looking carefully as the signatures on the two certificates of service, it is clear that the signatures are different. For example, Pando-Aucay's signature on the certificate of service for the first NTA begins at the "n" in "Signature." Supp. App. 38. However, his signature on the certificate of service on the second NTA begins at the "S" in "Signature" and dips much farther below the signature line than the signature on the first certificate of service. Supp. App. 47. Similarly, the signature of Mark Szalczyk, the immigration officer, is placed differently on each of the signature lines on the certificates of service and has a different appearance on each. By concluding that the certificates of service were identical, the District Court clearly erred.

In light of our determination that there are, in fact, two different certificates of service, we need not address any of Pando-Aucay's legal arguments, since those arguments all depend upon the fact that he was never served with the second NTA showing the correct hearing location. His signature on the certificate of service eviscerates his argument.

---

[5] "We apply a mixed standard of review to a district court's decision on a motion to dismiss an indictment, exercising plenary review over legal conclusions and clear error review over factual findings." *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013) (citing *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012)).

## Conclusion

Since no facts in the record support Pando-Aucay's argument, we will affirm the order of the District Court denying his motion to dismiss the indictment.