NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2382
_____

DAWN CUTILLO; INFINITY HEALTH LLC,
                                                        Appellants

v.

DAVID CUTILLO; INFINITY HEALTH ADVISORS LLC

IHA DISTRIBUTION, LLC
(Intervenor in District Court)
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 5-21-cv-02787)
District Judge:  Honorable John M. Gallagher
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 27, 2024

Before:   JORDAN, SMITH, *Circuit Judges*
and BUMB,* *Chief District Judge.*

(Filed: July 1, 2024)

* Honorable Renée Marie Bumb, Chief District Judge of the United States District
Court for the District of New Jersey, sitting by designation.

_____

OPINION**

_____

JORDAN, *Circuit Judge*.

Dawn and David Cutillo are siblings and former business partners. Dawn's company, Infinity Health LLC ("Infinity Health"), entered into a licensing agreement with Infinity Health Advisors LLC ("IHA"), of which David owns eighty percent.[1] The license relates to the franchising of a natural hormone therapy program that Dawn developed. Dawn now challenges the District Court's dismissal of her copyright claim against IHA and the Court's holding that the parties had entered into an exclusive license agreement.[2] Because her arguments lack merit, we will affirm.

## I. BACKGROUND

Beginning in 2009, Dawn developed "natural hormone balancing methodologies[,]" which she copyrighted in a book called "The Hormone Shift" and in corresponding instructional materials (together, the "Works"). (J.A. at 56.) She formed Infinity Health to commercialize the "Becoming Balanced" or "BeBalanced" hormone

_____

** This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Intending no undue familiarity, we use the parties' first names for ease in distinguishing them.

[2] Unless otherwise specified, we refer to both Dawn and Infinity Health as "Dawn" and in the singular, for ease for reference when referring to the claims in this suit.

2

therapy program (the "System") that she created, and she granted to Infinity Health an "oral, implied license" to the Works. (Opening Br. at 2; J.A. at 24, **33**.) Around 2014, Dawn and David formed IHA to pursue franchising.[3] Dawn, through Infinity Health, licensed the copyrights in and to the Works to IHA, which license was memorialized in the operative "Exclusive Master Distributor and License Agreement" (the "License Agreement"). (J.A. at 24, 34-35.)

Section 1(c) of the License Agreement states that IHA has "the perpetual, exclusive, royalty-free right to use the System in order to continue managing and operating a franchise system … in the manner determined by Franchisor [i.e., IHA[4]] and subject to the terms and conditions set forth [] in this Agreement."[5] (J.A. at 25.) The License Agreement also contemplates that IHA "may require Owner [i.e., Infinity Health[6]] to provide consultation services with regard to refining and developing all aspects of the [p]roducts, [s]ervices, and System." (J.A. at 26.) The License

---

[3] Dawn owns fifteen percent of the membership units in IHA, Infinity Health owns five percent, and David owns the remaining eighty percent.

[4] Under the License Agreement, IHA is the "Franchisor." (J.A. at 24.)

[5] The "License Agreement makes no references to … the Works[.]" (Opening Br. at 10.) It only refers to the "System." The Second Amended Complaint, however, explains that "[the] Exclusive Master Distributor and License Agreement … reflect[s] [Infinity Health]'s sublicense to IHA to make use of the Works and other associated intellectual property[.]" (J.A. at 34-35.) Therefore, Dawn alleges that the System encompasses the copyrighted Works at issue.

[6] Infinity Health is designated in the License Agreement as the "Owner." (J.A. at 24.)

Agreement's termination provision in Section 9(a) grants Infinity Health the right to "terminate the license described in Section 1(c) … in the event that [IHA] fails to properly support the BeBalanced franchise system by requiring its franchisees to administer the System and utilize the [p]roducts and [s]ervices according to the reasonable specifications established by Owner." (J.A. at 28.)

Following the License Agreement's execution, Dawn "bec[a]me aware" that IHA "ha[d] been creating, copying, distributing and displaying unauthorized derivative versions of the Works." (J.A. at 35.) Dawn objected via email to those changes, but IHA paid her no heed, she says, and prevented her from having access to the materials created.

As a result of those and other disputes, Dawn and Infinity Health sued David, IHA, and intervenor IHA Distribution, LLC, alleging eleven claims. The defendants filed a partial motion to dismiss, which the Court granted in part and denied in part. As relevant here, the Court held that IHA's "exclusive license to 'the Works' and related materials [wa]s a viable defense against [the] claim of copyright infringement and the claim must be dismissed." (J.A. at 59.)

Dawn filed a motion for partial reconsideration of the Court's dismissal of Count One, and that motion was summarily denied. The Court then granted summary judgment in part to the defendants and, declining to exercise supplemental jurisdiction, dismissed the remaining state law claims and counterclaims without prejudice. This timely appeal followed. Before us, Dawn challenges only the District Court's dismissal of Count One of the Second Amended Complaint for Copyright Infringement under 17 U.S.C. § 101 et seq.

4

## II.  DISCUSSION[7]

Dawn argues that the District Court erred in holding that the License Agreement was an exclusive copyright agreement and that, in any event, IHA exceeded the scope of the license by violating Section 9(a) of the agreement.

"To establish a claim of copyright infringement, a plaintiff must show: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."  *Tanksley v. Daniels*, 902 F.3d 165, 172-73 (3d Cir. 2018) (internal quotation marks omitted).  Granting a license to use the copyright materials defeats a claim for copyright infringement, so long as the licensee operates within the scope of the license.  *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute … is not an infringer of the copyright with respect to such use."); *cf. MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991) (holding that "the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license").

The crux of Dawn's copyright claim is that IHA and David exceeded the scope of the license:  "[D]efendants have engaged in the unauthorized creation[,] … copying,

---

[7] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the district court's grant of a motion to dismiss, *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 415 (3d Cir. 2006), accepting all well-pled allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

distribution and display of [] derivative versions of the Works[.]" (J.A. at 46.)  But the License Agreement does not forbid IHA from creating, copying, distributing, or displaying derivative variations of the Works.  It contains no limits at all.  It grants to IHA "the perpetual, exclusive, royalty-free right to use the System … in the manner determined by [it] and subject to the terms and conditions set forth" in the License Agreement.  (J.A. at 25.)  There are no terms and conditions limiting that use.

The only "term or condition" that Dawn attempts to point to in the License Agreement is the termination provision in Section 9(a), which provides that termination of the license may occur "in the event that [IHA] fails to properly support the BeBalanced franchise system by requiring its franchisees to administer the System and utilize the Products and Services according to the reasonable specifications established by [Infinity Health]." (J.A. at 28.)  She does not, however, make any allegation that IHA has failed to "properly support the … franchise system[.]" (J.A. at 28.)  Further, the License Agreement itself contemplates that IHA would "refin[e] and develop[] all aspects of the … System." (J.A. at 26; *see also* J.A. at 25 (granting IHA the "right to use the System … *in the manner determined by* [*IHA*.]" (emphasis added)).)  She has thus failed to state a claim, and, accordingly, the District Court did not err in dismissing Count One of the Second Amended Complaint.[8]

---

[8] As "we may affirm on any ground supported by the record," *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020), we need not decide whether the License Agreement was an exclusive license.

6

**III.**    **CONCLUSION**

For the foregoing reasons, we will affirm the District Court's judgment.